No. 24-2154

United States Court of Appeals
for the Eighth Circuit

**Minnesota Bankers Association, et al.,**

*Plaintiffs-Appellants,*

**and**

**Federal Deposit Insurance Corp., et al.,**

*Defendants-Appellees.*

APPEAL FROM DECISION OF THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF MINNESOTA

**ADDENDUM TO PRINCIPAL BRIEF OF APPELLANTS
MINNESOTA BANKERS ASSOCIATION AND LAKE
CENTRAL BANK**

**FREDRIKSON & BYRON, P.A.**
David R. Marshall (#89-032)
Leah Janus (#08-0362)
Kyle W. Ubl (#21-0255)
W. Thomas Wheeler (#24-0284)
60 South Sixth Street
Suite 1500
Minneapolis, MN 55402-4400
(612) 492-7000

*Attorneys for Appellants*

# TABLE OF CONTENTS

**Document**                                                              **Page**

Order Granting Defendants' Motion to Dismiss            Add. 1

Exhibit B to Amended Complaint                         Add. 9

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Bankers Association, and Lake Central Bank, | Civ. No. 23-2177 (PAM/ECW) |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER |
| Federal Deposit Insurance Corporation, and Martin J. Gruenberg, in his official capacity as Chairman of the Federal Deposit Insurance Corporation, | |
| Defendants. | |

This matter is before the Court on Defendants' Motion to Dismiss. For the following reasons, the Motion is granted.

## BACKGROUND

Plaintiffs Minnesota Bankers Association is a "trade association that represents 281 commercial banks, trust companies, and savings associations that have an official branch in the state of Minnesota." (Am. Compl. (Docket No. 13) ¶ 27.) Plaintiff Lake Central Bank is "a Minnesota state-chartered commercial bank with its main office located in Annandale, Minnesota" and a member of the Association. (Id. ¶ 31.) Plaintiffs challenge a Financial Institution Letter ("FIL") issued by Defendant Federal Deposit Insurance Corporation ("FDIC") in June 2023. Plaintiffs contend that this guidance, called FIL 32, "is a legislative rule promulgated without adherence to essential administrative procedures." (Id. ¶ 7.) Plaintiffs ask the Court to permanently enjoin the enforcement of

FIL 32 and declare it invalid.

FIL 32 addresses the practice of charging multiple insufficient funds fees, or NSF fees, for the same transaction. A bank may charge a consumer multiple NSF fees when, for example, a merchant attempts more than once to cash a check for which the consumer's account has an insufficient balance.

The FDIC hypothesizes that charging a consumer multiple NSF fees could in some circumstances run afoul of existing banking law. The FDIC is statutorily mandated to ensure that "insured depository institution[s]" are not "engaging in unsafe or unsound practices in conducting the business of the depository institution." 12 U.S.C. §§ 1818(a)(2)(A)(i), (a)(2)(B). Should the FDIC determine that an institution is engaged in unsafe or unsound practices, it may, after notice and a hearing, terminate the institution's FDIC insured status.

The FDIC issued a predecessor to FIL 32, FIL 40, in August 2022.[1] Both FIL 40 and FIL 32 reflect the FDIC's theory that charging multiple NSF fees can constitute an "unsafe or unsound practice[]." 12 U.S.C. §§ 1818(a)(2)(A)(i), (a)(2)(B). Thus, FIL 40 stated that it was "guidance to ensure that supervised institutions are aware of the consumer compliance risks associated with assessing multiple nonsufficient funds (NSF) fees arising from the re-presentment of the same unpaid transaction." FDIC, <u>Supervisory Guidance on Multiple Re-Presentment NSF Fees</u> (August 2022) (Compl. Ex. A (Docket No. 1-1)). FIL

---

[1] Plaintiffs' original Complaint challenged FIL 40. After Defendants pointed out that FIL 32 was the operative guidance on the issue and that FIL 40 had been rescinded, Plaintiffs amended their Complaint. The Amended Complaint now challenges FIL 32 and FIL 40 "to the extent FIL 40 retains any force or effect." (Am. Compl. ¶ 6.)

32 revised FIL 40 in June 2023, but did not change the substance of the guidance. FIL 32 warns financial institutions that,

> [w]hile specific facts and circumstances ultimately determine whether a practice violates a law or regulation, the failure to disclose material information to customers about re-presentment and fee practices has the potential to mislead reasonable customers, and there are situations that may also present risk of unfairness if the customer is unable to avoid fees related to re-presented transactions.

FDIC, Supervisory Guidance on Multiple Re-Presentment NSF Fees (June 2023) (Compl. Ex. B (Docket No. 1-2)). The FDIC pointed out two specific "potential risks": when a bank's disclosures "do not adequately advise customers of this practice" those disclosures may be deceptive, and "if multiple NSF fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for customers to bring their account to a positive balance in order to avoid the assessment of additional NSF fees," the bank may be committing an unfair practice. Id. at 1-2. T

FIL 32 thus "encouraged" institutions "to review their practices and disclosures regarding the charging of NSF fees for re-presented transactions" and provided options for "risk-mitigation practices." Id. at 2. The FDIC advised banks that it would "take appropriate action to address consumer harm and violations of law" during its supervision and enforcement activities, and would focus on "identifying re-presentment related issues and ensuring correction of deficiencies and remediation to harmed consumers, when appropriate." Id. at 3. FIL 32 also states that, if banks identify NSF issues, "the FDIC expects supervised financial institutions" to take several actions, including, "full corrective action, including providing restitution to harmed customers . . . ." Id.

Plaintiffs contend that FIL 32 constitutes a rule that requires them to make changes to their policies with regard to charging multiple NSF fees. The Amended Complaint contains four counts, all brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. Count I alleges that FIL 32 was implemented without the APA's required notice and comment period. Count II claims that FIL 32 constitutes arbitrary and capricious agency action. Count III asserts that the FDIC exceeded its statutory authority by attempting to define what practices are unfair or deceptive under the Federal Trade Commission Act, 15 U.S.C § 57a(a)(1)(B). And Count IV alleges that FDIC violated its own regulations in issuing FIL 32 because those regulations prohibit enforcement actions based on supervisory guidance.

The FDIC seeks dismissal of all counts, arguing first that subject-matter jurisdiction is lacking because Plaintiffs do not have standing, because the relief they seek would not redress any alleged injury. The FDIC also contends that Plaintiff's claims fail on the merits because FIL 32 does not impose rights or obligations, is not a binding legislative rule, and does not give rise to any legal consequences.

**DISCUSSION**

**A.      Standing**

Because the FDIC challenges Plaintiffs' standing, that question must be addressed first. See Brown v. Medtronic, Inc., 628 F.3d 451, 455 (8th Cir. 2010) (The court "must address questions of standing before addressing the merits of a case where standing is called into question."). The threshold inquiry is whether Plaintiffs have established the "'irreducible constitutional minimum of standing' [by] a showing of 'injury in fact' to the

4

plaintiff that is 'fairly traceable to the challenged action of the defendant,' and 'likely [to] be redressed by a favorable decision.'" Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)); see also Lujan, 504 U.S. at 561 (noting that the party invoking the Court's jurisdiction bears the burden to establish the elements of standing).  In this case, as discussed in more detail below, the standing inquiry overlaps with the merits, and in particular whether the FIL constitutes final agency action to which the APA applies.

The FDIC contends that Plaintiffs cannot demonstrate the final element of the standing analysis:  that their injury is likely to be redressed by a favorable decision.[2]  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998) (redressability is the "likelihood that the requested relief will redress the alleged injury").  Plaintiffs' alleged injury is a procedural one:  the FDIC promulgated requirements for NSF fees without the benefit of the APA's rulemaking procedures.  Plaintiffs seek relief in the form of a declaration that FIL 32 is invalid and a permanent injunction against its enforcement.

Plaintiffs remain required to minimize risk and to comply with statutory unfair-and-deceptive-practices prohibitions.  Plaintiffs claim that if the FDIC vacates FIL 32, they will not have to monitor their policies regarding multiple re-presentment fees, and will not be required to develop consumer disclosures about their policies in that regard.  But Plaintiffs

---

[2] The FDIC does not challenge the Association's standing to bring suit on behalf of its members.  See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 181 (2000) (discussing associational standing).

remain obligated not to engage in deceptive and unfair practices and acts. Rescinding FIL 32 will have no impact on Plaintiffs' statutory obligations.

Plaintiffs argue that their burden to establish redressability is lessened because they assert only a procedural injury. See Iowa League of Cities v. EPA, 711 F.3d 844, 870-71 (8th Cir. 2013). The practical implication of Plaintiffs' argument is that, because FIL 32 is a regulation that was adopted without complying with the APA's requirements, they have been injured because they are forced to comply with FIL 32. But that argument puts the cart before the horse, presuming that FIL 32 prescribes conduct rather than offers guidance. A procedural injury requires showing first that the agency action in question is a final one. See Massachusetts v. EPA, 549 U.S. 497, 518 (2007) (A litigant with a procedural right "has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant.") (emphasis added). Thus, the lesser burden on which Plaintiffs rely applies only if the agency action in question is subject to the APA in the first instance. See Sierra Club v. EPA, 699 F.3d 530, 533 (D.C. Cir. 2012) ("Having shown its members' redressable concrete interest, [a petitioner association] can assert violation of the APA's notice-and-comment requirements, as those procedures are plainly designed to protect the sort of interest alleged.") (emphasis added). Plaintiffs only have a "redressable concrete interest" if FIL 32 is a final rule to which the APA applies. As discussed below, FIL 32 is not a final rule under the APA.

B.   **Final Agency Action**

The APA provides a right to judicial review of "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v Spear, 520 U.S. 154, 177–78 (1997) (internal citations and quotation marks omitted). The "touchstone" of the analysis is "whether an agency announcement is binding on regulated entities or the agency." Iowa League of Cities, 711 F.3d at 862.  "[A]n agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding or is applied by the agency in a way that indicates it is binding." Gen. Elec. Co. v. EPA, 290 F.3d 377, 383 (D.C. Cir. 2002) (citations omitted).

The FDIC's policies provide that FIL 32 is not final agency action to which the APA applies, providing that "supervisory guidance does not have the force and effect of law" but rather merely "outlines the FDIC's supervisory expectations or priorities and articulates the FDIC's general views regarding appropriate practices for a given subject area." Statement Clarifying the Role of Supervisory Guidance, 12 C.F.R. § Pt. 302, App. A (Apr. 1, 2021).  As discussed above, there are no legal consequences that flow from FIL 32—the FDIC will not institute any enforcement actions based on FIL 32, but rather will take action for violations of an institution's statutory obligations.

Nor have Plaintiffs demonstrated that the FDIC applies FIL 32 in a way to indicate

7

**Add. 007**

that it is binding. FIL 32 describes certain conduct that could, depending on the circumstances, violate the FTCA. FIL 32 does not state that charging multiple representation fees for the same transaction will violate the FTCA, but rather that doing so and failing to adequately disclose the practice may be a violation of the statute. Plaintiffs cannot point to any FDIC examination or decision that relies on FIL 32 as the basis for the agency's action. FIL 32 is not a final action to which the APA applies. Plaintiffs have not established that their alleged injury will be redressed by the relief they request, and they therefore lack standing.

C. Other Issues

The FDIC argues that Plaintiffs' challenge to FIL 32 is not ripe, and that Counts II and IV specifically are unripe for adjudication. The FDIC also contends that FIL 32 is not arbitrary and capricious and that FDIC acted within its authority in issuing FIL 32. Because Plaintiffs lack standing, a decision on these issues is unnecessary to the resolution of this Motion.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that** the Motion to Dismiss (Docket No. 17) is **GRANTED** and the Amended Complaint (Docket No. 13) is **DISMISSED without prejudice**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:     April 8, 2024

*s/Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge

# EXHIBIT B

**Supervisory Guidance on Multiple Re-Presentment NSF Fees**

**August 2022**
*(Revised June 2023)*

The Federal Deposit Insurance Corporation (FDIC) is issuing guidance to ensure that supervised institutions are aware of the consumer compliance risks associated with assessing multiple non-sufficient funds (NSF) fees arising from the re-presentment of the same unpaid transaction. Additionally, the FDIC is sharing its supervisory approach where a violation of law is identified and full corrective action is expected.

**Background**

Many financial institutions charge NSF fees when checks or Automated Clearinghouse (ACH) transactions are presented for payment, but cannot be covered by the balance in a customer's transaction account. After receiving notice of declination, merchants may subsequently resubmit the transaction for payment. Some financial institutions charge additional NSF fees for the same transaction when a merchant re-presents a check or ACH transaction on more than one occasion after the initial unpaid transaction was declined. In these situations, there is an elevated risk of violations of law and harm to consumers.

During consumer compliance examinations, the FDIC has identified violations of law when financial institutions charged multiple NSF fees for the re-presentment of unpaid transactions. The FDIC found that some disclosures provided to customers did not fully or clearly describe the institution's re-presentment practice, including not explaining that the same unpaid transaction might result in multiple NSF fees if an item was presented more than once.

**Potential Risks Arising from Multiple Re-Presentment NSF Fees**

<u>Consumer Compliance Risk</u>:  Practices involving the charging of multiple NSF fees arising from the same unpaid transaction results in heightened risks of violations of Section 5 of the Federal Trade Commission (FTC) Act, which prohibits unfair or deceptive acts or practices (UDAP). While specific facts and circumstances ultimately determine whether a practice violates a law or regulation, the failure to disclose material information to customers about re-presentment and fee practices has the potential to mislead reasonable customers, and there are situations that may also present risk of unfairness if the customer is unable to avoid fees related to re-presented transactions.[1]

- <u>Deceptive Practices</u>:  In a number of consumer compliance examinations, the FDIC determined that if a financial institution assesses multiple NSF fees arising from the same transaction, but disclosures do not adequately advise customers of this practice, the misrepresentation and omission of this information from the institution's disclosures is

---

[1] These practices may also violate Section 1036(a)(1)(B) of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 (12 U.S.C. § 5536(a)(1)(B)), which prohibits any covered person or service provider from engaging in, among other things, abusive acts or practices in connection with a consumer financial product or service.

1

material.  The FDIC found that if this information is not disclosed clearly and conspicuously to customers, the material omission of this information is considered to be deceptive pursuant to Section 5 of the FTC Act.

- Unfair Practices:  In certain circumstances, a failure to adequately advise customers of fee practices for re-presentments raises unfairness concerns because the practices may result in substantial injuries to customers; the injury may not be reasonably avoidable; and there may be no countervailing benefits to either customers or competition.  In particular, a risk of unfairness may be present if multiple NSF fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity for customers to bring their account to a positive balance in order to avoid the assessment of additional NSF fees.  While revising disclosures may address the risk of deception, doing so may not fully address the unfairness risks.

Third-Party Risk:  Third parties, including core processors, often play significant roles in processing payments, identifying and tracking re-presented items, and providing systems that determine when NSF fees are assessed.  Such third-party arrangements may present risks if not properly managed.  Institutions are expected to maintain adequate oversight of third-party activities and appropriate quality control over products and services provided through third-party arrangements.[2]  In addition, institutions are responsible for identifying and controlling risks arising from third-party relationships to the same extent as if the third-party activity was handled within the institution.  Institutions are encouraged to review and understand the risks presented from their core processing system settings related to multiple NSF fees, as well as understand the capabilities of their core processing system(s), such as identifying and tracking re-presented items and maintaining data on such transactions.

Litigation Risk:  Multiple NSF fee practices may result in heightened litigation risk.  Numerous financial institutions, including some FDIC-supervised institutions, have faced class action lawsuits alleging breach of contract and other claims because of the failure to adequately disclose re-presentment NSF fee practices in their account disclosures.  Some of these cases have resulted in substantial settlements, including customer restitution and legal fees.

**Risk Mitigation Practices**

Institutions are encouraged to review their practices and disclosures regarding the charging of NSF fees for re-presented transactions.  The FDIC has observed various risk-mitigating activities that financial institutions have taken to reduce the potential risk of consumer harm and avoid potential violations of law regarding multiple re-presentment NSF fee practices.  These include:

- Eliminating NSF fees.

- Declining to charge more than one NSF fee for the same transaction, regardless of whether the item is re-presented.

---

[2] FIL-29-2023, "Interagency Guidance on Third-Party Relationships: Risk Management" (June 6, 2023).

- Conducting a comprehensive review of policies, practices, and monitoring activities related to re-presentments and making appropriate changes and clarifications, including providing revised disclosures to all existing and new customers.

- Clearly and conspicuously disclosing the amount of NSF fees to customers and when and how such fees will be imposed, including:
  - Information on whether multiple fees may be assessed in connection with a single transaction when a merchant submits the same transaction multiple times for payment;
  - The frequency with which such fees can be assessed; and
  - The maximum number of fees that can be assessed in connection with a single transaction.

- Reviewing customer notification or alert practices related to NSF transactions and the timing of fees to ensure customers are provided with an ability to effectively avoid multiple fees for re-presented items, including restoring their account balance to a sufficient amount before subsequent NSF fees are assessed.

If institutions self-identify re-presentment NSF fee issues, the FDIC expects supervised financial institutions to:

- Take full corrective action, including providing restitution to harmed customers, consistent with the restitution approach described in this guidance;

- Promptly correct NSF fee disclosures and account agreements for both existing and new customers, including providing revised disclosures and agreements to all customers;

- Consider whether additional risk mitigation practices are needed to reduce potential unfairness risks; and

- Monitor ongoing activities and customer feedback to ensure full and lasting corrective action.

**FDIC's Supervisory Approach**

When exercising supervisory and enforcement responsibilities regarding multiple re-presentment NSF fee practices, the FDIC will take appropriate action to address consumer harm and violations of law. The FDIC's supervisory response will focus on identifying re-presentment related issues and ensuring correction of deficiencies and remediation to harmed customers, when appropriate.

In reviewing compliance management systems, the FDIC recognizes an institution's proactive efforts to self-identify and correct violations. Examiners will generally not cite UDAP violations that have been self-identified and fully corrected prior to the start of a consumer compliance examination.[3] In addition, in determining the scope of any restitution requested, the FDIC will consider the likelihood of substantial consumer harm from the practice as well as an institution's

---

[3] Page II-6.4 of the FDIC's Consumer Compliance Examination Manual.

3

**Add. 012**

record keeping practices and any challenges an institution may have with retrieving, reviewing, and analyzing transaction data or other information about the frequency and timing of re-presentment fees.[4]

If examiners identify violations of law due to re-presentment NSF fee practices that have not been self-identified and fully corrected prior to a consumer compliance examination, the FDIC will evaluate appropriate supervisory or enforcement actions, including civil money penalties and restitution, where appropriate.

---

[4] The FDIC has generally accepted a two-year lookback period for restitution in instances where institutions have been unable to reasonably access accurate ACH data for re-presented transactions. In addition, based on the on-going and extensive challenges observed in accurately identifying re-presented transactions through core processing systems, the FDIC does not intend to request an institution to conduct a lookback review absent a likelihood of substantial consumer harm.

4

## Certificate of Service

I hereby certify that on July 25, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: July 25, 2024　　　　　　　　　*/s/ David R. Marshall*
　　　　　　　　　　　　　　　　　　　David R. Marshall