# United States Court of Appeals

## For the Eighth Circuit

_____

No. 24-2154
_____

Minnesota Bankers Association; Lake Central Bank

*Plaintiffs - Appellants*

v.

Federal Deposit Insurance Corporation; Martin J. Gruenberg, in his official capacity as Chairman of the Federal Deposit Insurance Corporation

*Defendants - Appellees*

------------------------------

American Bankers Association; State Bankers Associations; Missouri Bankers Association; Arkansas Bankers Association; Iowa Bankers Association; Nebraska Bankers Association; North Dakota Bankers Association; South Dakota Bankers Association; ITS, Inc.

*Amici on Behalf of Appellant(s)*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: March 20, 2025
Filed: September 17, 2025
_____

Before COLLOTON, Chief Judge, ERICKSON and GRASZ, Circuit Judges.
_____

Appellate Case: 24-2154     Page: 1     Date Filed: 09/17/2025 Entry ID: 5558612

COLLOTON, Chief Judge.

The Minnesota Bankers Association and Lake Central Bank (collectively, the "Banks") sued the Federal Deposit Insurance Corporation (FDIC) seeking to vacate a guidance document issued by the agency—namely, Financial Institutions Letter 32-2023: Supervisory Guidance on Multiple Re-Presentment NSF Fees (FIL 32). The Banks claim that FIL 32 is a regulation that the FDIC may promulgate only through notice and comment rulemaking, if it has authority to issue the letter at all. The district court[*] ruled that the Banks lacked standing to challenge FIL 32 and granted the FDIC's motion to dismiss the complaint for lack of jurisdiction. The Banks appeal, and we affirm the dismissal.

I.

The FDIC regulates and supervises the banks and savings associations whose deposits are insured by the FDIC. 12 U.S.C. §§ 1811, 1817, 1818. The FDIC issues guidance documents under its supervisory authority. *See* 12 C.F.R. § 302. In August 2022, the FDIC issued Financial Institutions Letter 40-2022: Supervisory Guidance on Multiple Re-Presentment NSF Fees (FIL 40). In June 2023, the FDIC revised FIL 40 and replaced it with FIL 32.

FIL 32 concerns the charging of additional insufficient funds fees when a transaction is presented for payment multiple times. FED. DEPOSIT INS. CORP., FIN. INST. LETTER 32-2023: SUPERVISORY GUIDANCE ON MULTIPLE RE-PRESENTMENT NSF FEES (2023). When a consumer attempts to use a check or debit card to pay an amount in excess of the consumer's account balance, the consumer's bank can decline the transaction and charge the consumer a non-sufficient funds fee, or "NSF fee."

---

[*]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Upon receiving notice that the transaction was declined, the merchant might run the transaction again, and a bank might charge the consumer another fee. The FDIC refers to these charges as multiple re-presentment NSF fees.

FIL 32 warns covered financial institutions that practices involving the charging of multiple NSF fees on re-presented transactions bear an increased risk of constituting unfair or deceptive acts or practices under § 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. FIL 32 cautions that "a risk of unfairness may be present if multiple NSF fees are assessed for the same transaction in a short period of time without sufficient notice or opportunity" to bring the account to a positive balance to avoid additional NSF fees. If an institution's disclosures do not adequately inform its customers about the institution's practice of charging multiple NSF fees for re-presented transactions, then the misrepresentation or omission of that information can be a deceptive trade act or practice.

The Banks claim that FIL 32 is a regulation subject to the Administrative Procedure Act because it compels the Banks to take new compliance measures and exposes the Banks to greater enforcement risk. They argue that the FDIC violated the APA by promulgating FIL 32 without notice and comment, and that FIL 32 is arbitrary and capricious. Finally, the Banks contend that the FDIC exceeded its statutory authority by attempting to define an unfair or deceptive trade act or practice under § 5 of the FTC Act.

The district court dismissed the case for lack of jurisdiction on the ground that the Banks failed to establish Article III standing. The district court determined that the Banks' alleged injuries were not redressable and that FIL 32 was not a final agency action. The Banks appeal, and we review the district court's decision *de novo*.

II.

We agree with the district court that the Banks' claims are not justiciable, but we reach that conclusion based on the alternative ground that the claims are not ripe for judicial review. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998); *Mo. Soybean Ass'n v. EPA*, 289 F.3d 509, 513 (8th Cir. 2002) (per curiam). This court "has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Sinochem Int'l v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Ripeness is a justiciability doctrine "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)). Because we conclude that the Banks' claims are not ripe for at least prudential reasons, we need not address the related but separate question of Article III standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 100 n.3 (1998); *Ohio Forestry Ass'n*, 523 U.S. at 732; *BMG Monroe I, LLC v. Village of Monroe*, 93 F.4th 595, 600-01 (2d Cir. 2024).

Ripeness depends on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967). The issues presented here are not fit for judicial decision because FIL 32 is not a final agency action subject to judicial review under the APA, 5 U.S.C. § 704. *See Abbott Laboratories*, 387 U.S. at 149; *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 162 (1967); *Lane v. U.S. Dep't of Agric.*, 187 F.3d 793, 795 (8th Cir. 1999).

An agency action is "final" if the action both marks the "'consummation' of the agency's decision-making process" and is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*,

-4-

520 U.S. 154, 177-78 (1997) (first quoting *Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 113 (1948); then quoting *Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)). The focus of the inquiry is whether the agency action is a "binding determination" that compels affirmative action or prohibits otherwise lawful action. *Id.* at 178 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992); *Sisseton-Wahpeton Oyate v. U.S. Corps of Eng'rs*, 888 F.3d 906, 915 (8th Cir. 2018).

On its face, FIL 32 does not declare unlawful multiple re-presentment NSF fees or any particular practice involved in the charging of those fees. The letter explains that its guidance is based the FDIC's experience in past consumer compliance examinations. In 2021, The FDIC brought its first enforcement actions for violations caused by multiple re-presentment NSF fee practices. FED. DEPOSIT INS. CORP., CONSUMER COMPLIANCE SUPERVISORY HIGHLIGHTS 8-9 (2022). In 2022, the FDIC cited 172 violations of § 5 of the FTC Act—thirteen percent of the total violations cited by the FDIC that year. FED. DEPOSIT INS. CORP., CONSUMER COMPLIANCE SUPERVISORY HIGHLIGHTS 4 (2023). Multiple re-presentment NSF fee practices were the most frequent cause of § 5 violations. *Id.* at 3.

From that experience, the FDIC found that "the failure to disclose material information to customers about re-presentment and fee practices has the potential to mislead reasonable costumers," and that "there are situations that may also present risk of unfairness if the customer is unable to avoid fees related to re-presented transactions," but "specific facts and circumstances ultimately determine whether a practice violates a law or regulation." FIL 32 encourages institutions to review their practices and disclosures regarding multiple re-presented NSF fees. The guidance provides a list of "risk-mitigating activities that financial institutions have taken" to reduce the potential that their multiple re-presentment NSF fee practices will violate the law.

-5-

The FDIC characterizes FIL 32 as non-binding supervisory guidance. The agency cites an agency regulation stating that "supervisory guidance does not have the force and effect of law, and the FDIC does not take enforcement actions based on supervisory guidance. Rather, supervisory guidance outlines the FDIC's supervisory expectations or priorities and articulates the FDIC's general views regarding appropriate practices for a given subject area." 12 C.F.R. § 302 app. A.

The Banks argue that FIL 32 defines "inadequate disclosures" and "inadequate alert practices" that violate the law, so FIL 32 prohibits action that was previously lawful. But the letter does not set out a rule defining those terms. The Banks attempt to piece together definitions from FIL 32's examples of risk-mitigating activities taken by financial institutions. The Banks then claim that FIL 32 creates "safe harbors" that demonstrate the letter's binding effect.

Safe harbor provisions can render an agency action binding if those provisions are themselves binding on the agency. *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598-99 (2016); *see also Texas v. EEOC*, 933 F.3d 433, 443-44 (5th Cir. 2019). Unlike the safe harbors identified by the Fifth Circuit in *Texas v. EEOC*, however, none of the risk-mitigation practices listed in FIL 32 provide an institution with a legal defense to enforcement. Taking a risk-mitigation measure does not guarantee that an institution's practices are lawful; it reduces the risk that its practices are unlawful. The FDIC does not recognize examples in supervisory guidance as safe harbors. *See* 12 C.F.R. § 302 app. A. Examiners must consider the facts and circumstances of a particular institution, including any risk-mitigating measures, to determine whether the institution's practices violate the law. *See id.*; *see also* Role of Supervisory Guidance, 86 Fed. Reg. 12079, 12083 (Mar. 2, 2021).

The American Bankers Association, as *amicus curiae*, argues that FIL 32 has the binding legal effect of exposing banks to higher civil penalties. The FDIC can assess civil monetary penalties in three tiers. 12 U.S.C. § 1818(i)(2). The highest tier

Appellate Case: 24-2154   Page: 6   Date Filed: 09/17/2025 Entry ID: 5558612

applies when an insured depository institution knowingly commits a violation. *Id.* § 1818(i)(2)(C). The Association contends that FIL 32 puts banks on notice such that any subsequent violation of § 5 of the FTC Act related to multiple re-presentment NSF fees by a bank would be "knowing" and subject to heightened penalties. At oral argument, the FDIC responded that whether a violation was committed knowingly is fact-dependent and that notice of FIL 32 alone would not prove knowledge.

An agency action that exposes a regulated entity to heightened penalties can constitute a final agency action. The Association relies primarily on *Sackett v. EPA*, 566 U.S. 120, 125-26 (2012), and *Hawkes Co. v. U.S. Army Corps of Engineers*, 782 F.3d 994 (8th Cir. 2015), *aff'd on other grounds*, 578 U.S. 590 (2016), but those cases present different situations that are not applicable here. *Sackett* addressed the finality of a compliance order that was issued to a particular party with immediate legal consequences, including exposure to double penalties in a future enforcement proceeding. 566 U.S. at 126. In *Hawkes*, the Corps issued a jurisdictional determination that required the company to seek a permit for peat mining. 782 F.3d at 1001. The company was faced with a choice of bearing the prohibitive cost of obtaining a permit or accruing a knowing violation of the Clean Water Act for every day that it continued to operate. *Id.* In both cases, the agency's action compelled a specific entity to take specific actions or face heightened penalties. *See also Ipsen Biopharmaceuticals, Inc. v. Azar*, 943 F.3d 953, 957-59 (D.C. Cir. 2019).

FIL 32 neither orders a covered institution to take specific action nor declares any particular practice unlawful. In an enforcement action, knowledge of FIL 32 may be evidence that an institution knowingly committed a violation of law, but the FDIC would be required to prove that the institution understood its practices to be unlawful based on the general information provided in FIL 32.

Withholding judicial consideration of FIL 32 does not impose significant hardship on the Banks. The FDIC does not rely on FIL 32 to bring enforcement

actions. The FDIC cited multiple re-presentment NSF fee practices in enforcement actions before the agency issued FIL 40, and the FDIC's own regulations prohibit it from basing enforcement actions on supervisory guidance letters. With or without FIL 32, the Banks face the same enforcement risk and incentive to review their policies.

The FDIC has cited institutions for hundreds of § 5 violations related to multiple re-presentment NSF fee practices. FIL 32 merely advises covered institutions about how the FDIC approaches potential violations during examinations and what the institutions can do to reduce their risk of violating the law. The letter is not a "definitive statement of [the FDIC's] position, determining the rights and obligations of the parties." *Bell v. New Jersey*, 461 U.S. 773, 780 (1983).

For these reasons, the judgment of the district court is affirmed.

GRASZ, Circuit Judge, concurring in the judgment.

I remain convinced agency letters threatening that regulated entities must either change their behavior or risk enforcement actions are no substitute for the regulatory framework Congress outlined in the Administrative Procedure Act. *See Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1002 (8th Cir. 2022) (Grasz, J., dissenting). The rule of law does not sanction agency governance by in terrorem effect. But here, the FDIC acknowledges FIL 32 "does not have the force and effect of law" and assures us it is merely non-binding supervisory guidance, of the sort the FDIC "does not take enforcement actions based on . . . ." 12 C.F.R. § 302 app. A. Because the court's opinion rightly rests on the FDIC's specific assurances that "FIL 32 neither orders a covered institution to take specific action nor declares any particular practice unlawful[,]" *ante* at 7, I concur in the conclusion that the Bank's claims are not ripe for judicial review.

_____

Appellate Case: 24-2154    Page: 8    Date Filed: 09/17/2025 Entry ID: 5558612